IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| In re Application of<br>CHEVRON CORPORATION, a Delaware corporation,<br><br>        Applicant,<br><br>CHARLES CHAMP, an individual,<br><br>        Respondent. | CIVIL ACTION NO. 1:10-mc-27 |

**REPLY IN SUPPORT OF APPLICATION OF CHEVRON
CORPORATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT ........................................................................................................ 2

    A.    Chevron's Application Satisfies All Statutory Requirements, And All Discretionary Factors Favor The Discovery Sought. ................................................................. 2

        1.    Chevron Has Properly Requested Discovery "For Use In" a Foreign Tribunal. ...................................... 2

        2.    The Treaty Arbitration Panel Is A Foreign Tribunal For The Purposes Of Section 1782. ............................... 3

        3.    Respondent Champ Is Not A Participant In The Foreign Proceedings Or Within The Jurisdiction Of The Foreign Tribunals. ............................................... 4

        4.    The Treaty Arbitration Tribunal and Ecuadorian Courts Are Receptive to U.S. Discovery. .................................... 4

        5.    The Discovery Sought Here Would Not Impermissibly Circumvent Any Foreign Proof-Gathering Restrictions. ................................................. 5

    B.    The Documents, Communications, And Information Of Respondent Champ Related To The Plaintiffs' Fraud Cannot Be Concealed Behind Claims Of Privilege. ................................................................... 5

        1.    None Of The Privileges Or Protections Claimed By Plaintiffs Apply To The Discovery Sought From Respondent Champ. ................................................. 6

        2.    Respondent's Participation In A Fraud Being Conducted By Plaintiffs Eliminates Any Claims Of Privilege. .................................................... 7

III. CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alberti v. Klevenhagen*,
   790 F.2d 1220 (5th Cir. 1986) ................................................................................8

*Chevron U.S.A., Inc. v. United States*,
   80 Fed. Cl. 340 (Fed. Cl. 2008) ..............................................................................10

*G.K. Las Vegas Ltd. P'ship v. Simon Property Group, Inc.*,
   671 F. Supp. 2d 1203 (D. Nev. 2009) .....................................................................10

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
   322 U.S. 238 (1944) ..............................................................................................1, 9

*In re Applic. of Chevron Corp.*,
   2010 WL 2038826 (S.D. Tex. May 20, 2010) .........................................................6

*In re Applic. of Chevron Corp.*,
   No. M-19-11, 2010 WL 1801526 (S.D.N.Y. May 10, 2010) ..................................3

*In re Applic. of Chevron Corp.*,
   No. M-19-111, Dkt. 35 at 14:7-12 (S.D.N.Y. May 19, 2010) ...............................10

*In re Application for an Order for Judicial Assistance in a Foreign
   Proceeding in the Labor Court of Brazil*,
   466 F.Supp.2d 1020 (N.D.Ill. 2006) ........................................................................2

*In re Grand Jury Subpoenas*,
   144 F.3d 653 (10th Cir. 1998) .................................................................................9

*In re Pioneer Hi-Bred Int'l, Inc.*,
   238 F.3d 1370 (Fed. Cir. 2001) ...............................................................................7

*In re Qwest Comms. Int'l*,
   No. 3:08-mc-93, 2008 U.S. Dist. LEXIS 115845 (July 9, 2008) ............................5

*In re Roz Trading Ltd.*,
   Case No. 1:06-cv-02305-WSD, 2007 U.S. Dist. LEXIS 2112
   (N.D. Ga. Jan. 11, 2007) ..........................................................................................4

**Table of Authorities**
**(Continued)**

Page(s)

*In re United States*,
　321 Fed. Appx. 953 (Fed. Cir. 2009)..................................................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
　542 U.S. 241 (2004).............................................................................................3, 4

*Regional Airport Auth. v. LFG, LLC*,
　460 F.3d 697 (6th Cir. 2006) ...............................................................................7

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
　257 F.R.D. 607 (E.D. Cal. 2009) ........................................................................7

*Tornay v. United States*,
　840 F.2d 1424, 1426 (9th Cir. 1988) ...................................................................6

*United States v. Washington*,
　157 F.3d 630 (9th Cir. 1998) ...............................................................................9

# I. INTRODUCTION

There is nothing "decontextualized" about the evidence of fraud presented by Chevron in its application for discovery under 28 U.S.C. § 1782. Plaintiffs and Respondent Champ colluded with Lago Agrio court "Special Master" Richard Cabrera to have Plaintiffs and their consultants perform Cabrera's work and write his report. That collusion—including an eight-hour meeting involving Champ and Cabrera discussing how Plaintiffs would write Cabrera's report—was caught on film. Cabrera then submitted the ghostwritten report, which assessed $27.3 billion in environmental damages against Chevron, to the Lago Agrio court, claiming that it was his own "neutral" and "impartial" work and repeatedly testifying to that court, under oath, that Plaintiffs had not assisted him in any way. Plaintiffs, for their part, do not deny that they ghostwrote "Cabrera's" report, instead seeking to divert this Court by claiming that Chevron is "alleg[ing] a 'scandal'" concerning Plaintiffs' contact with Cabrera because their ghostwriting was somehow "authorized" by the Ecuadorian court.

As the Supreme Court has concluded, "No fraud is more odious than an attempt to subvert the administration of justice." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944). Here, Plaintiffs not only have used U.S.-based consultants to orchestrate a fraud in Ecuador, but now that they have been caught on film doing so, are resorting to misleading claims or outright falsehoods to try to prevent or delay discovery. This Court should not countenance Plaintiffs' behavior. Chevron respectfully requests that the Court grant the Application in its entirety, deny Plaintiffs' baseless privilege claims, and order Respondent Champ to

produce documents within 5 days of this Court's order and submit to deposition within 10 days of this Court's order.

## II. ARGUMENT

### A. Chevron's Application Satisfies All Statutory Requirements, And All Discretionary Factors Favor The Discovery Sought.

Plaintiffs focus much of their brief on the statutory requirements and discretionary factors associated with § 1782 discovery. These requirements and factors are thoroughly addressed in Chevron's Application, and by the nine different district courts that have found the statutory and *Intel* factors satisfied in related § 1782 proceedings filed by Chevron. (Dkt. 2 at 2-3; Request for Judicial Notice of Supplemental Materials ("Suppl. RJN"), Ex. A.) Chevron nonetheless will respond briefly to Plaintiffs' arguments.

#### 1. Chevron Has Properly Requested Discovery "For Use In" a Foreign Tribunal.

Plaintiffs' argument that the evidence sought by Chevron is not "for use" in the Lago Agrio proceeding because the discovery is intended to prove that a fraud is being conducted in that proceeding defies logic. Suppl. RJN, Ex. A at 4 ("Respondent's second argument, that discovery used to demonstrate the bias of a foreign court is not 'for use in' that court, is similarly unpersuasive."). The "for use in" prong of Section 1782 has never been interpreted to prevent the use of Section 1782 in cases of fraud, but rather generally has been interpreted as a minimal relevance requirement. *E.g.*, *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F.Supp.2d 1020, 1029 (N.D.Ill. 2006) ("This Court holds that 'for use in' mirrors the requirements in

Federal Rule of Civil Procedure 26(b)(1) and means discovery that is relevant to the claim or defense of any party, or for good cause, any matter relevant to the subject matter involved in the foreign action.").

Plaintiffs' assertion that the evidence sought is not "for use in" the Treaty Arbitration because the arbitral panel "has not yet even determined whether it has the jurisdiction to hear Chevron's claims" (Dkt. 20 at 11), also has no merit. The Supreme Court in *Intel* made it clear that Section 1782 does not require that the proceedings before the foreign tribunal even be "pending" or "imminent," as long as adjudicative proceedings are "within reasonable contemplation," *Intel*, 542 U.S. at 259—a standard the Treaty Arbitration more than satisfies here.

### 2. The Treaty Arbitration Panel Is A Foreign Tribunal For The Purposes Of Section 1782.

Plaintiffs' next argument, that Section 1782 cannot be used for the Treaty Arbitration because a "private arbitration" is not a "foreign tribunal," is based on a fundamental mischaracterization of the Treaty Arbitration. As the Southern District of New York found, the "arbitration here at issue is *not* pending in an arbitral tribunal established by private parties. It is pending in a tribunal established by an international treaty, the BIT between the United States and Ecuador, and pursuant to UNCITRAL rules." Dkt. 9-1 at *6. Such "international arbitral bodies operating under UNCITRAL rules constitute 'foreign tribunals' for purposes of Section 1782." *Id.*; *see also* Dkt. 2 at 15. Unsurprisingly, every court to have considered Plaintiffs' argument that the Treaty Arbitration is not before a "foreign tribunal" for the purposes of Section 1782 has rejected it. *E.g.*, Dkt. 9-1 at *5-6; Suppl. RJN, Ex. A at 3-4.

3

### 3. Respondent Champ Is Not A Participant In The Foreign Proceedings Or Within The Jurisdiction Of The Foreign Tribunals.

Plaintiffs also assert that the first of the *Intel* discretionary factors, which considers whether "the person from whom discovery is sought is a participant in the foreign proceeding," has not been satisfied. *Intel*, 542 U.S. at 264. But Respondent Champ plainly is not a participant in either the Lago Agrio Litigation or the Treaty Arbitration. *In re Roz Trading Ltd.*, Case No. 1:06-cv-02305-WSD, 2007 U.S. Dist. LEXIS 2112, at *6 (N.D. Ga. Jan. 11, 2007) ("Respondent is not a party to the arbitration, and on this ground alone the first *Intel* factor is satisfied."). Plaintiffs nonetheless suggest that this Court should deny Section 1782 discovery because the "material sought [through discovery] is within the foreign tribunal's jurisdictional reach." (Dkt. 20 at 16) This is simply false. Plaintiffs have not provided any basis to suggest that the Ecuadorian court or the arbitral panel has jurisdiction to order Respondent Champ to produce documents or sit for a deposition.

### 4. The Treaty Arbitration Tribunal and Ecuadorian Courts Are Receptive to U.S. Discovery.

Plaintiffs next assert that Chevron "has made no showing that either the Ecuadorian court or the BIT arbitrators are receptive to the evidence sought here," (Dkt. 20 at 17), ignoring the nine other federal district courts in related Section 1782 proceedings that have reached the opposite conclusion. Dkt. 2 at 2-3; Suppl. RJN, Ex. A. In fact, Chevron already has submitted evidence collected from its Section 1782 actions to the Ecuadorian court in the Lago Agrio Litigation, and that court incorporated Chevron's filings into the official docket. Suppl. RJN, Ex. B.

Plaintiffs' argument is even less persuasive with respect to the Treaty Arbi-

tration. They speculate that the arbitral panel would be disinterested in the evidence, but, as the U.S. District Court for the District of New Jersey found, the evidence sought by Chevron is relevant to the Treaty Arbitration:

> The documents are clearly, in this Court's view, relevant to the proceedings before the arbitration …. The evidence sought is probative of issues in the Lago Agrio litigation, as Chevron needs the sought evidence to impeach the Cabrera report if its suspicions of an improper relationship are borne out. Moreover, the evidence sought goes to the heart of the Treaty Arbitration's concern with the conduct of the Lago Agrio litigation.

Dkt. 9-9 at 45, 47.

### 5. The Discovery Sought Here Would Not Impermissibly Circumvent Any Foreign Proof-Gathering Restrictions.

Plaintiffs also assert that Chevron's application is an effort to circumvent foreign proof-gathering restrictions because, they claim, Chevron should first have asked the Lago Agrio court for the discovery sought. As noted above, Plaintiffs provide no support for the proposition that the Ecuadorian court has jurisdiction over Respondent Champ. Chevron also notes that it was not until Respondent Champ was identified on the outtakes from the March 3rd meeting making a presentation to Cabrera that Chevron learned of his testimony in the Lago Agrio litigation. Chevron could not ask the Lago Agrio court to order discovery of a testifying expert whose existence was kept hidden.

### B. The Documents, Communications, And Information Of Respondent Champ Related To The Plaintiffs' Fraud Cannot Be Concealed Behind Claims Of Privilege.

Plaintiffs posit that, pursuant to *In re Qwest Comms. Int'l*, No. 3:08-mc-93, 2008 U.S. Dist. LEXIS 115845 (July 9, 2008), this Section 1782 proceeding re-

5

quires a "two-step process" that would leave resolution of their privilege objections to Chevron's subpoena to some unspecified later date. But the present case, unlike *Qwest*, does not involve an *ex parte* application, to which the Respondent later filed a motion to quash. Rather, the Application was served on Plaintiffs, and they were ordered by this Court to file a "brief responsive to the substantive application." (Dkt. 18 at 4) Plaintiffs cannot choose to ignore the substance of Chevron's petition, which included an extensive discussion of privilege, and ignore the Order of this Court to respond to that petition in an effort to further delay discovery.

Although Plaintiffs now attempt to cast their interactions with Cabrera as appropriate and authorized by the Ecuadorian court, that is a fiction. (Dkt. 2 at 8) Unsurprisingly, nothing in Ecuadorian law allows a party to plan, conduct, and draft a Special Master's supposedly "independent" report, and hide the truth about that drafting from the other party and the court.

1. **None Of The Privileges Or Protections Claimed By Plaintiffs Apply To The Discovery Sought From Respondent Champ.**

It is well established that "[a] party asserting a[n] evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988). Here, neither Plaintiffs nor Respondent dispute that Respondent attended the March 3, 2007 meeting with Cabrera, that Respondent presented to Cabrera and others a remediation plan he developed, that Respondent provided that plan and other information to Cabrera for his report, and that Respondent was provided with information from others that also was given to or made available to Cabrera. These acts of disclosure destroy any factual predicate for a claim of privilege. *In re Applic. of Chevron Corp.*, 2010

6

WL 2038826, at *4 (S.D. Tex. May 20, 2010) ("Additionally, the fact that the materials were voluntarily given to Cabrera, an agent of the court, destroys this privilege even if it were to apply").

Because Respondent Champ has thus testified in this case, "fundamental fairness requires disclosure of all information supplied to [him] in connection with [his] testimony." *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001). The law is clear that where, as here, consulting experts have "'entered the judicial arena'" by submitting testimony to a court (or in this case a court auxiliary) and becoming testifying experts themselves, all their work is discoverable. *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 611 (E.D. Cal. 2009). Indeed, "the 'overwhelming majority' of courts" have held "that Rule 26 creates a bright-line rule mandating disclosure of all documents, including attorney opinion work product, given to testifying experts." *Regional Airport Auth. v. LFG, LLC*, 460 F.3d 697, 717 (6th Cir. 2006) (citation omitted).

### 2. Respondent's Participation In A Fraud Being Conducted By Plaintiffs Eliminates Any Claims Of Privilege.

Plaintiffs' response to the facts showing that Plaintiffs' conduct in the Lago Agrio Litigation precludes any claims of privilege is the bare assertion that Chevron has made "wild and conclusory assertions" about fraud. (Dkt. 20 at 25) But the evidence submitted with Chevron's application makes it undeniably clear that Plaintiffs, Respondent, and Cabrera ignored the Lago Agrio court's orders, colluded to ghostwrite Cabrera's report, and then concealed that effort with claims of "independence" and "impartiality."

Plaintiffs do not even attempt to dispute these facts, but rather sweepingly al-

7

Case 1:10-mc-00027-GCM -DLH Document 22 Filed 08/25/10 Page 11 of 17

lege that Chevron has somehow taken the film footage evidencing these acts "out of context." (*See* Dkt. 20 at 8.) Plaintiffs have not, however, demonstrated that any evidence submitted with Chevron's motion was misleading or devoid of contextual material that would explain away Plaintiffs' illicit dealings with "Special Master" Cabrera or their other misconduct.[1]

Plaintiffs have no response to Chevron's showing that, consistent with the significance of Cabrera's position, the Lago Agrio court issued numerous orders on the matter of his "independence," "impartiality," and the requisite "transparency" of his and his team's work. (Dkt. 2 at 8) Every one of these Lago Agrio court orders belies Plaintiffs' present claim that their secret control of Cabrera was proper.

As the equivalent of a special master, Cabrera exercised "powers that [were] quasijudicial," such as fact-finding, and "[g]iven these sweeping powers . . . [was required to] perform his duties objectively." *Alberti v. Klevenhagen*, 790 F.2d 1220, 1229 (5th Cir. 1986) (internal quotations omitted). U.S. courts have emphasized, as

---

[1] Indeed, Plaintiffs' attempt to establish "context" for Champ's statement that there is no groundwater data that shows contamination (Dkt. 2 at 12), only proves that in front of Cabrera on March 3, Champ was willing to claim contamination that he then says privately to Plaintiffs' counsel on March 4 does not really exist. (Dkt. 3 (Clip CRS-195-05-CLIP-01 (5:06)). The only other "evidence" Plaintiffs cite to support their claim that the footage in Chevron's motion was taken out of context is *Crude* Director Berlinger's statement in the press that the outtakes are misleading. (Dkt. 20 at 8) Notably, however, in opposition to Chevron's pleadings in the Southern District of New York, Mr. Berlinger failed to make any such assertion in his sworn declaration, and he did not articulate in any way in his brief how the excerpts Chevron has provided have been taken out of context. *See* Suppl. RJN, Ex. D (Opposition filed by Joseph A. Berlinger); *id.*, Ex. E (Declaration of Joseph A. Berlinger).

8

the Lago Agrio court did, that "[n]eutrality of the special master is . . . a paramount concern." *United States v. Washington*, 157 F.3d 630, 660 (9th Cir. 1998). As Judge Chesler held in the related § 1782 action in New Jersey in overruling Plaintiffs' privilege claims as to another of their consultants, "an employee of a party covertly functioning as a consultant to a court-appointed expert in the same proceeding can only be viewed as a fraud upon that tribunal." *See* Dkt. 9-9 at 43:23-44:1.

The Supreme Court of the United States has itself condemned conduct such as that of Respondent and Plaintiffs as a crime and fraud. In *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), attorneys for a patent seeker ghostwrote an article "signed by an ostensibly disinterested expert" endorsing its device, then relied on that article in defending its patent to the Circuit Court. *Id.* at 240. As in this case, the nominal author claimed the document to be his work and the authorship came to light only through compelled discovery in other proceedings. *Id.* at 247. The Court was "unanimous in condemning the transaction disclosed by this record." *Id.* at 251. It called what the ghostwriting party had done "a deliberately planned and carefully executed scheme to defraud," "deception and fraud," "corrupt activities in suppressing the truth," "tampering with the administration of justice," and a "fraud on that Court." *Id.* at 245, 246, 247, 249.

The evidence provided by Chevron with its application establishes that Plaintiffs' interactions with Respondent Champ were "for the purpose of getting advice for the commission of a crime or fraud." *In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998) ("The crime-fraud exception applies to both the attorney-

client privilege and the work-product doctrine"); *see also Chevron U.S.A., Inc. v. United States*, 80 Fed. Cl. 340, 364 (Fed. Cl. 2008), *writ of mandamus granted in part*, *In re United States*, 321 Fed. Appx. 953 (Fed. Cir. 2009); *G.K. Las Vegas Ltd. P'ship v. Simon Property Group, Inc.*, 671 F. Supp. 2d 1203, 1207, 1229 (D. Nev. 2009). The crime-fraud exception vitiates any claim of privilege over Respondent Champ's documents, information, and testimony, and there is no basis for Plaintiffs' claims of "privilege."

## III. CONCLUSION

As noted in Chevron's application and recognized by this Court (Dkt. 18 at 2), the Lago Agrio court ordered submissions filed by September 16, 2010 with regard to remediation of environmental damages, the subject of the discovery Chevron seeks from Respondent Champ. Plaintiffs are engaged in an effort to "run out the clock" on Chevron, by delaying this proceeding with meritless arguments and baseless claims of privilege. Suppl. RJN, Ex. C, (*In re Applic. of Chevron Corp.*, No. M-19-111, at 14:7-12 (S.D.N.Y. May 19, 2010) ("What I see here is a race, and at the moment, the petitioners [including Chevron] are in imminent jeopardy, and [the Plaintiffs] have not offered to stop the race. What they want to do is they want to tie the legs of the competing horse in the race. That's what they want to do.")).

Petitioner respectfully requests that this Court grant the Application in its entirety, deny Plaintiffs' privilege and relevance objections, and order Respondent Champ to produce documents within five (5) days of this Court's order and submit to deposition within ten (10) days of this Court's order.

10

DATED: August 25, 2010

Respectfully submitted,

ADAMS, HENDON, CARSON, CROW & SAENGER, P.A.

/s/ George W. Saenger
George W. Saenger, Esq.
72 Patton Avenue
Asheville, NC  28801
T:  (828) 252-7381
F:  (828) 252-5018
E:  gsaenger@adamsfirm.com
North Carolina State Bar No: 7299

GIBSON, DUNN & CRUTCHER LLP

/s/ Andrea E. Neuman
Andrea E. Neuman, Esq. (*admitted pro hac vice*)
Gibson, Dunn & Crutcher, LLP
3161 Michelson Drive
Irvine, CA  92612-4412
T:  (949) 451-3937
F:  (949) 451-4220
E:  ANeuman@gibsondunn.com


/s/ Peter E. Seley
Peter E. Seley, Esq. (*admitted pro hac vice*)
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Ave., N.W.
Washington, DC  20036
T:  (202) 887-3689
F:  (202) 530-9594
E:  PSeley@gibsondunn.com

Attorneys for Applicant
CHEVRON CORPORATION

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system on August 25, 2010, on counsel of record, as well as via electronic mail on the following:

| | |
|---|---|
| Wyatt S. Stevens<br>ROBERTS & STEVENS, P.A.<br>BB&T Building, Suite 1100<br>P.O. Box 7647<br>Asheville, NC 28802 | ***Counsel for Respondent Charles Champ and Interested Parties the Ecuadorian Plaintiffs***<br><br>T: 828-258-6992<br>wstevens@robert-stevens.com |
| Jonathan S. Abady<br>Ilann Maazel<br>Andrew F. Wilson<br>Matthew Brinckerhoff<br>EMERY CELLI BRINCKERHOFF & ABADY LLP<br>75 Rockefeller Plaza, 20th Floor<br>New York, NY 10019 | ***Counsel for Plaintiffs in the Yaiguaje Litigation (S.D.N.Y.); Laura Belanger, Peter Jones and Interested Parties, the Plaintiffs in the Yaiguaje Litigation [Dist. of CO.];[SD Texas]***<br><br>T: 212-763-5000<br>F: 212-763-5001<br>jabady@ecbalaw.com<br>imaazel@ecbalaw.com<br>awilson@ecbalaw.com |
| Steven R. Donziger<br>245 W. 104th St.<br>New York, NY 10025-4249 | ***Counsel for Plaintiffs in the Yaiguaje Litigation (S.D.N.Y.)***<br><br>T: 917-566-2526<br>sdonziger@donzigerandassociates.com |

| | |
|---|---|
| Eric W. Bloom<br>Lauren Butcher<br>Tomas Leonard<br>WINSTON & STRAWN LLP<br>1700 K Street, NW<br>Washington, D.C. 20006 | ***Counsel for ROE in SDNY II Litigation***<br><br>T: 202-282-5743<br>F: 202-282-5100<br>ebloom@winston.com<br>lbutcher@winston.com<br>tleonard@winston.com |
| C. MacNeil Mitchell<br>WINSTON & STRAWN LLP<br>200 Park Avenue<br>New York, NY 10166 | ***Counsel for ROE in SDNY II Litigation***<br><br>T: 212-294-6700<br>F: 212-294-4700<br>cmitchell@winston.com |
| Ricardo E. Ugarte<br>WINSTON & STRAWN LLP<br>35 Wacker Drive<br>Chicago, IL 60601 | ***Counsel for ROE in SDNY II Litigation***<br><br>T: 312-558-6130<br>F: 312-558-5700<br>rugarte@winston.com |
| David S. Bloch<br>WINSTON & STRAWN LLP<br>101 California Street<br>San Francisco, CA 94111-5801 | ***Counsel for Interested Party, the ROE in Stratus 1782 proceeding (with Eric Bloom) (Dist. of CO.)***<br><br>T: 415-591-1000<br>dbloch@winston.com |
| William H. Narwold<br>Ingrid L. Moll<br>Motley Rice, LLC<br>One Corporate Center<br>20 Church Street, 17th Floor<br>Hartford, CT 06103<br>imoll@motleyrice.com | ***Counsel for Plaintiffs in the Yaiguaje Litigation***<br><br>T: 800-768-4026<br>imoll@motleyrice.com |

 /s/ Claudia M. Barrett
Claudia M. Barrett